LAURIE D. RAU          (CSBN 183035)
ANTHONY G. CHAVOS      (CSBN 131937)
JENNIFER W. GATEWOOD (CSBN 225066)
JANET S. PARK          (CSBN 263511)
**CHAVOS & RAU, APLC**
3 MacArthur Place, Suite 150
Santa Ana, CA 92707
(714) 435-9505
(714) 435-9506 FAX
Email: lrau@chavosandrau.com
Email: achavos@chavosandrau.com
Email: jgatewood@chavosandrau.com
Email: jpark@chavosandrau.com

Attorneys for Plaintiff STEVE CHAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOURTHERN DIVISION

| | |
|---|---|
| STEVE CHAN | Case No.: SACV – 01300-DOC (JCx)<br>Hon. David O. Carter |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANT FIA CARD SERVICES, N.A.'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT |
| vs. | |
| FIA CARD SERVICES, MBNA AMERICA BANK N.A. and DOES 1 - 50, | Date: January 24, 2011<br>Time: 8:30 a.m.<br>Courtroom: 9D |
| Defendants. | |

Plaintiff STEVE CHAN (hereinafter referred to as "Chan") by and through his attorneys of record, hereby submits his Opposition to Defendant FIA CARD SERVICES, N.A. (hereinafter referred to as "FIA")'s Motion to Dismiss Plaintiff's Fourth Amended Complaint, as follows:

///

///

///

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

i

**PLAINTIFF'S OPPOSITION TO DEFENDANT FIA CARD SERVICES, N.A.'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

L:\7136\Pleadings\12.17.10 - Chan Opp to FIA MTD 4AC.doc

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................... 1

II. LEGAL STANDARD ..................................................................... 1

III. LEGAL ARGUMENT ................................................................ 2

    A. CHAN SUFFICIENTLY STATES A CLAIM FOR MALICIOUS PROSECUTION ................................................................. 2

    B.    CHAN SUFFICIENTLY STATES A CLAIM FOR FRAUDULENT CONCEALMENT ...................................................... 5

    C.    CHAN SUFFICIENTLY STATES A CLAIM FOR VIOLATION OF BUSINESS AND PROFESSION CODE SECTION 17200 ET SEQ .......... 8

        1.    RESTITUTION .................................................... 8

        2.    UNLAWFUL, UNFAIR, OR FRAUDULENT CONDUCT ... 9

            a.    Unlawful Conduct ............................... 9

            b.    Unfair Conduct ................................. 10

            c.    Fraudulent Conduct ......................... 11

    D.    CHAN SUFFICIENTLY STATES A CLAIM UNDER RICO ....... 12

        1.    PERSON .............................................. 12

        2.    RACKETEERING ACTIVITY ..................... 12

        3.    PATTERN ........................................... 13

        4.    ENTERPRISE ...................................... 14

IV. CONCLUSION ......................................................................... 18

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

1

## <u>TABLE OF AUTHORITIES</u>

2  *Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992) ....................................8

3  *Bertero v. National General Corp.*, 13 Cal.3d 43 (1974) ....................................... 2

4  *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336 (2004) .................................... 4, 5

5  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*

6  20 Cal.4th 163, (1999) ...........................................................................8, 10

7  *Committee on Children's Television, Inc. v. General Foods Corp.,*

8  35 Cal.3d 197, (1983) ...................................................................... 11

9  *Countrywide Financial Corp. v. Bundy*, 187 Cal. App. 4th 234 (2010) ...............10

10  *Daniels v. Robbins*, 182 Cal. App. 4th 204 (2010) ...........................................2

11  *Dahlgren v. First Nat'l Bank*, 533 F.3d 681 (8th Cir. 2008) ...........................17

12  *Downey Venture v. LMI Ins.* Co., 66 Cal. App. 4th 478 (1998) ........................... 3

13  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) ...........................9

14  *H.J., Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229 (1989) .......................14

15  *In re Tobacco II Cases,* 46 Cal.4th 298 (2009) ...................................... 11, 12

16  *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728 (2003) ............................ 3

17  *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ............................. 5, 6

18  *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997) ....................................6

19  *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.,*

20   6 Cal.App.4th 603 (1992) ................................................................ 5

21  *Masuda v. Thomas Richards & Co.* 759 F. Supp. 1456 (C.D. Cal 1991) .............13

22  *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) ..........9, 10, 11

23  *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) .......................... 13, 15, 16

24  *Ray v. First Fed. Bank*, 61 Cal. App. 4th 315 (1998) ......................................... 4

25  *Reves v. Ernst & Young*, 507 U.S. 170 (1993) ...................................... 16

26  *Roberts v. Sentry Life Insurance,* 76 Cal. App. 4th 375 (1990) ....................... 2, 3

27  *Rothman v. Vetter Park Management*, 912 F.2d 315 (9th Cir. 1990) ..................12

28  *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260 (2006) ............................ 3

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA  92707

iii

1   *Stavropoulos v. Superior Court*, 141 Cal. App. 4th 190 (2006) ........................... 5

2   *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917(2003) ......................... 11

3   *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ............................................. 12

4   *United States v. Turkette*, 452 U.S. 576 (1981) ..................................................... 15

5   *Univ. of Md. at Balt., et  al. v. Peat, Marwick, Main & Co.,*

6   996 F.2d 1534 (3d Cir. 1993) ....................................................................... 16

7   **<u>STATUTES & RULES</u>**

8   15 U.S.C. 1601, et seq. ...................................................................... 6

9   18 U.S.C. §§ 1341 and 1343 ..............................................................12

10   18 U.S.C. § 1962(c) .....................................................................12, 16

11   18 U.S.C. § 1961 ........................................................................ 12

12   18 U.S.C. § 1961(3) ..................................................................... 12

13   18 U.S.C. § 1961(4) ..................................................................... 14

14   18 U.S.C. §1961(5) ...................................................................... 13

15   Bus. & Prof. Code, § 17200 *et seq* ............................................... 9

16   CCP § 335.1 .............................................................................. 5

17   Civ. Code, § 1747 et seq. ........................................................... 6

18   FRCP 9(b) ..................................................................................7

19

20

21

22

23

24

25

26

27

28

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA  92707

**PLAINTIFF'S OPPOSITION TO DEFENDANT FIA CARD SERVICES, N.A.'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

L:\7136\Pleadings\12.17.10 - Chan Opp to FIA MTD 4AC.doc

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

CHAN filed his original complaint in the Superior Court in the State of California, County of Orange ("Superior Court") on June 24, 2008. After subsequent demurrers and amended complaints, FIA removed this case from Superior Court to this District Court, on August 24, 2010. FIA filed a motion to dismiss Chan's Third Amended Class Action Complaint originally filed in Superior Court, which was granted with leave to amend. On November 15, 2010, Chan filed his Fourth Amended Complaint ("FAC"). FIA had until December 1, 2010 to file a responsive pleading. Without proper notice as required under Local Rule 7-19.1, FIA filed an ex parte application with this court on November 19, 2010 requesting an extension of time to file their pending motion to dismiss. This Court granted FIA's ex parte application on November 22, 2010, and allowed FIA to file their motion to dismiss by December 15, 2010.

As presented below, Chan's FAC states sufficient allegations and facts to state all four of his causes of action. FIA attempts to argue the merits of Chan's claims, which is not proper in a motion to dismiss. As such, FIA's Motion to Dismiss should be denied in its entirety.

### II.    LEGAL STANDARD

In order to survive a 12(b)(6) motion, a complaint must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must draw on its judicial experience and common sense to determine whether a complaint states a plausible claim for relief. *Id.*

Dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

# III.   LEGAL ARGUMENT

## A.   CHAN SUFFICIENTLY STATES A CLAIM FOR MALICIOUS PROSECUTION

The elements of a cause of action for malicious prosecution are (1) the institution of an action (2) without probable cause and (3) with malice, (4) termination of the action favorable to the defendant, and (5) resulting damage by way of attorneys' fees incurred in defense, mental distress, and/ or injury to reputation or social standing. *Bertero v. National General Corp.*, 13 Cal.3d 43, 50 (1974).

Here, Chan alleges all the necessary elements. First, FIA instituted judicial actions against Chan. FAC at ¶ 39, 42; FIA's Memorandum of Points and Authorities in Support of its Motion to Dismiss FAC ("FIA Motion") at P 6, fn. 3.

Secondly, Chan alleges that FIA's actions were filed without probable cause, because FIA knew Chan never agreed to arbitrate claims, and arbitration awards were fraudulently obtained using false documents and corrupt arbitrators. FAC at ¶¶ 13, 17, 18, 19, 20, 21, 22, 23, 30, 31, 33, 34, 38, 39, 40, 41, 57, 60, 66, 67, 83, 84.  Also, FIA's arbitrations and judicial actions were in the wrong venue and FIA did not have proper jurisdiction. FAC ¶¶ 29, 38, 39.  " Probable cause is lacking when a prospective plaintiff and counsel do not have evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for trial." *Daniels v. Robbins*, 182 Cal. App. 4th 204, 222 (2010). That is exactly what Chan is alleging in his FAC – that FIA did not have sufficient evidence to uphold their arbitration awards. FAC ¶¶ 19, 20, 27, 29, 30, 31, 33, 37, 39, 40, 41.

FIA attempts to use the *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375 case to argue that, as a matter of law, if a party wins at trial level, there exists probable cause even if an appellate court reverses. *See* FIA Motion at P 6. However, this is not true. The court in *Roberts v. Sentry Life Insurance* held that

2

1    some victories after a full and fair jury trial may establish probable cause. 76 Cal.

2    App. 4th 375, 383. But the court goes on to explain that in circumstances where

3    "judgment was induced by materially false facts submitted," it would not be a

4    conclusive showing of the existence of probable cause. *Id.* at 384. "For that matter,

5    a jury verdict also might be induced by materially false testimony, raising a good

6    argument that no conclusive presumption of probable cause should arise." *Id; See*

7    *also Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 743 (2003)("And just as

8    an action that ultimately proves nonmeritorious may have been brought with

9    probable cause, successfully defending a lawsuit does not establish that the suit

10   was brought without probable cause.").

11        Here, Chan is alleging that FIA's judgments were not grounded by full and

12   fair adversary proceedings, but they were gotten by incomplete evidence, and false

13   testimony. FAC ¶¶ 19, 20, 27, 29, 30, 31, 33, 37, 39, 40, 41. FAC alleges that FIA

14   procured their trial judgment by fraud, due to FIA's use of fraudulent documents as

15   evidence, and fraudulent arbitration awards, and with knowledge that their

16   judgments were lacking jurisdiction. FAC ¶¶ 18, 19, 20, 27, 29, 30, 31, 32, 33, 34,

17   37, 39, 40, 41. Chan's allegations are sufficient to show that FIA did not have

18   probable cause, as to which the merits can be determined later in the litigation.

19        Thirdly, Chan alleges that FIA initiated judicial actions with malice, because

20   FIA initiated their petitions with an ulterior purpose. FAC ¶¶ 79, 84. The "malice"

21   element "relates to the subjective intent or purpose with which the defendant acted

22   in initiating the prior action." *Downey Venture v. LMI Ins.* Co., 66 Cal. App. 4th

23   478, 494 (1998).  "[T]he malice required in an action for malicious prosecution is

24   not limited to actual hostility or ill will toward plaintiff but exists when the

25   proceedings are instituted primarily for an improper purpose... Malice may also be

26   inferred from the facts establishing lack of probable cause." *Soukup v. Law Offices*

27   *of Herbert Hafif*, 39 Cal. 4th 260, 292 (2006). Chan alleges that FIA's conspired

28   with NAF in order to "harm consumers" and "insulate their unlawful activity from

3

1   any potential financial exposure that would come as a result of any oversight by an

2   impartial court." FAC ¶ 13. Chan further alleges that "Defendants [FIA and

3   MBNA] sought to immunize themselves from consumer protection laws and

4   ...statutes imposed by states including California." FAC ¶ 13. Also, "FIA uses such

5   arbitrary arbitration proceedings and awards...offensively against consumer...in

6   order to use unlawful debt collection actions to bully and force cardholders to pay

7   inordinate sums of money that cannot be upheld under the law." FAC ¶ 34. "FIA

8   has obtained millions of dollars of judgments through illegal arbitration

9   proceedings...." FAC ¶ 58. FIA was turning a profit from these unsupported

10  judgments. FAC ¶ 71. "Defendants...enforce wrongful judgments...in order to

11  collect money from unknowing credit-card holders...in order to reach the credit-

12  card holders' homes and other property, so Defendants could make a profit." FAC

13  ¶ 80. There are clearly sufficient facts alleging an "ulterior purpose" in the FAC, as

14  well as for lack of probable cause. Thus, Chan meets this element easily.

15      Fourthly, the judicial actions terminated in Chan's favor, because they were

16  vacated by the appellate court. California courts have long recognized that

17  "favorable termination may depend on appellate proceedings after initial decision

18  in the trial court." *Ray v. First Fed. Bank*, 61 Cal. App. 4th 315, 319 (1998). In

19  *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336 (2004), the California Supreme

20  Court held that the appellate court's decision "necessarily resolved the underlying

21  action on the merits, and its decision reflects on appellant's innocence of the

22  alleged misconduct. The decision therefore constitutes a favorable termination for

23  malicious prosecution purposes." 32 Cal. 4th at 344-45. Similarly, Chan's

24  appellate court findings constitute a favorable termination for his malicious

25  prosecution purposes. FAC ¶ 57. The substance of FIA's lawsuit was to confirm its

26  arbitration awards. FAC ¶¶ 39, 40. The main issue of FIA's lawsuits was whether

27  FIA's arbitration awards could be confirmed, and the appellate court ultimately

28  found that FIA never executed a valid and binding arbitration agreement with

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

4

1  Chan, and thus FIA's arbitration awards were void. FAC ¶ 57. This finding was

2  based on the merits of FIA's lawsuit, and not merely "technical" grounds. *See*

3  *Casa Herrera,* 32 Cal. 4th at 342 (listing examples of "technical" dismissals,

4  including (1) on statute of limitations grounds, (2) pursuant to settlement, or (3) on

5  grounds of laches). FIA's arguments are inapposite here, where although Chan lost

6  at the trial level, Chan actually won overall because the entire proceeding

7  terminated in his favor. Chan clearly alleges that he obtained a favorable

8  termination based on the appellate court's voiding the trial court's decision. Again,

9  Chan easily meets this element.

10  Finally, Chan sufficiently alleges damages. Chan suffered attorneys' fees,

11  mental distress and injury to reputation and social standing because of FIA's lien

12  on his house and negative credit reporting to credit agencies. FAC ¶¶ 43, 46, 49,

13  50, 57, 86-88. FIA does not dispute this element.

14  Also, Chan's malicious prosecution claim is timely. The statute of

15  limitations for a claim for malicious prosecution is two years after the appellate

16  process. *See* CCP § 335.1; *Stavropoulos v. Superior Court*, 141 Cal. App. 4th 190,

17  197 (2006). FIA does not dispute this issue of timeliness.

18  Thus, FIA's Motion to Dismiss should be denied as to Chan's first cause of

19  action for malicious prosecution.

20 **B.  CHAN SUFFICIENTLY STATES A CLAIM FOR FRAUDULENT**

21 **CONCEALMENT**

22  The elements for a claim of concealment are: (1) Defendant concealed or

23  suppressed a material fact, (2) duty to disclose to plaintiff, (3) defendant had intent

24  to defraud plaintiff, (4) plaintiff was unaware, and would not have acted if he had

25  known of the concealed or suppressed fact, and (5) damage. *Marketing West, Inc.*

26  *v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 612–613 (1992). "Averments of

27  fraud must be accompanied by 'the who, what, when, where, and how' of the

28  misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

5

2009).

Here, Chan alleges all the required elements, including the "who, what, when, where and how" of the concealment. FIA concealed the conflict of interest it had with NAF in order to insulate itself from liability from unlawful debt collection practices. FAC ¶ 73. FIA concealed the fact it was colluding and conspiring with NAF in order to make a profit from collecting spurious debts from California card holders. FAC ¶¶ 58, 73. This was done from 2002 to the present, and Chan only found out about FIA's concealment in July 2009. FAC ¶¶ 14, 74. The concealment was done by FIA, as FIA worked together with NAF in order to wrongfully arbitrate and unlawfully use judicial process to collect money from Chan and other California MBNA/FIA credit card holders. FAC ¶¶ 13, 30, 34, 35, 58, 59, 60-71, 73. FIA acknowledges that Chan alleges a conspiracy and concealment of FIA's conspiracy. FIA Motion at P 9.

Chan sufficiently alleges the duty element. "There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). Chan alleges that FIA is a consumer credit card lender who issued credit cards to Chan. FAC ¶ 12. FIA, as a national bank, and credit card issuer, has a duty of disclosure towards their clients, pursuant to the federal Truth in Lending Act (15 U.S.C. 1601, et seq.), Federal Reserve Regulation Z (12 C.F.R. § 226 et seq. (2010)), and the Song-Beverly Credit Card Act of 1971 (Civ. Code, § 1747 et seq.).

Moreover, even if FIA is not held to be in a confidential relationship with Chan, Chan sufficiently alleges that FIA had exclusive knowledge of material facts that were not known to Chan. FIA never disclosed arbitration clauses to Plaintiff,

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

6

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

1   that would give them any power to arbitrate claims against Chan when Chan

2   entered into a credit card agreement with FIA. FAC ¶¶ 12, 13. Also, FIA made

3   partial representations, but suppressed material facts. FIA claimed there was an

4   arbitration agreement, but in reality, the arbitration was fixed by FIA and NAF in

5   order to circumvent state and federal laws and make a profit. FAC ¶ 13. Moreover,

6   FIA made false representations to the arbitrator in order to get a default award

7   against Chan. FAC ¶¶ 18, 21, 23. FIA concealed material facts during the sham

8   arbitration. FAC ¶¶ 19, 20, 22. FIA concealed the fact that FIA were being

9   arbitrated in front of Mr. Krotinger in Northern California. FAC ¶ 28. FIA made

10  false representations to the court. FAC ¶ 40. FIA concealed material facts to the

11  court in order to receive an award against Chan. FAC ¶ 40. FIA concealed the fact

12  that Christopher Knoff was its affiliate and agent, and were working together to get

13  Chan's property. FAC ¶48, 49, 51, 52.  FIA concealed their conflict of interest with

14  working with NAF. FAC ¶ 72, 73.

15          As for intent and knowledge, Federal Rule of Civil Procedure 9(b) provides

16  "[m]alice, intent, knowledge, and other conditions of a person's mind may be

17  averred generally." FRCP 9(b). Chan clearly alleges that FIA had the requisite

18  intent. FAC ¶ 92. Chan also clearly alleges that Chan did not have knowledge of

19  FIA and NAF's conspiracy, and would not have taken out loans to satisfy FIA's

20  arbitration awards entered against him, and would not have refinanced his home if

21  Chan knew.  FAC ¶¶ 93-94. The intent and knowledge elements are easily met.

22          Chan also clearly alleges damages because of FIA's actions. FAC ¶¶ 95-96.

23  Chan is stuck with payments of a high interest loan, has lost valuable credit rating,

24  lost value to his home and property, incurred attorneys fees, and lost money from

25  FIA collection on its wrongful arbitration awards and judicial orders.  FAC ¶¶ 46,

26  48, 49, 50, 57, 95, 96, 101.

27          Because Chan sufficiently alleges the requisite elements for fraudulent

28  concealment, FIA's Motion to Dismiss should be denied, as to Chan's second

1 | cause of action.

2 | **C.    CHAN SUFFICIENTLY STATES A CLAIM FOR VIOLATION OF**

3 | **BUSINESS AND PROFESSION CODE SECTION 17200 ET SEQ.**

4 | **1.    RESTITUTION**

5 | The scope of section 17200 is broad, and includes "anything that can

6 | properly be called a business practice and that at the same time is forbidden by

7 | law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20

8 | Cal.4th 163, 180 (1999).  Furthermore, "a practice may be deemed unfair even if

9 | not specifically proscribed by some other law." *Id.* "[T]o state a claim under the

10 | [UCL] one need not plead and prove the elements of a tort. Instead, one need only

11 | show that 'members of the public are likely to be deceived." *Bank of the West v.*

12 | *Superior Court,* 2 Cal.4th 1254, 1266–1267(1992).

13 | FIA repeats their arguments from their previous Motion to dismiss Chan's

14 | Third Amended Complaint, where they emptily argue that Chan does not have

15 | standing to sue for money damages. *See* FIA Motion at P 11. Again, Chan

16 | contends that he is not asking for money damages in his unfair business claim, but

17 | is asking for restitution and injunctive relief. FIA ¶¶ 102, 105. FIA agrees that

18 | Chan is allowed such remedies. FIA Motion at P 11.

19 | FIA argues that restitution is not available to Chan because Chan "does not

20 | have clean hands." FIA Motion at P 11. FIA is attempting to argue the merits of

21 | Chan's claims and FIA's defenses. Chan alleges that FIA's collection practices

22 | were wrongful, and the debt amount was not valid. FAC ¶¶ 14-19, 22, 41. FIA,

23 | through its affiliates and agents, induced Chan into a high-interest mortgage, took

24 | the money held in trust, and continues to collect on mortgage payments from Chan.

25 | FAC ¶¶ 49, 50, 52, 56, 57, 101.

26 | Chan agrees that this Court previously dismissed Chan's claim for Unfair

27 | Business Practices in his Third Amended Complaint. This Court held that the Third

28 | Amended Complaint is "devoid of any allegation that Defendant did not return all

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

8

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

1   sums collected from Plaintiff as a result of the vacatur of those judgments." *See*

2   Civil Minutes on Proceeding (In Chambers): Granting Defendant's Motion to

3   Dismiss, at P 8. This Court granted FIA's motion to dismiss Chan's claim for

4   unfair business practices, but allowed Chan leave to amend. *See id.*

5       Pursuant to this holding, Chan amended his Third Amended Complaint, and

6   added the fact that FIA did not return all sums collected from Plaintiff, in his FAC.

7   FAC ¶ 57. ("Despite the appellate court's ruling, Defendants did not return all of

8   the money it had collected on the void judgment against Plaintiff Chan.") This

9   allegation, in conjunction with his other allegations, is sufficient for standing and

10  to state a claim for restitution under the UCL.

11      **2.    UNLAWFUL, UNFAIR, OR FRAUDULENT CONDUCT**

12      The purpose of Bus. & Prof. Code, § 17200 *et seq.* ("UCL") "is to protect

13  both consumers and competitors by promoting fair competition in commercial

14  markets for goods and services." *McKell v. Washington Mutual, Inc.*, 142 Cal.

15  App. 4th 1457, 1470 (2006). The UCL defines "unfair competition" to mean and

16  include "any unlawful, unfair or fraudulent business act or practice and unfair,

17  deceptive, untrue or misleading advertising and any act prohibited by [the false

18  advertising law]." *Id.* "Because the statute is framed in the disjunctive, a business

19  practice need only meet one of the three criteria to be considered unfair

20  competition." *Id.* at 1471. Here, Chan alleges all three.

21      **a.    Unlawful Conduct**

22      "An unlawful business practice under Business and Professions Code section

23  17200 is ' an act or practice, committed pursuant to business activity, that is at the

24  same time forbidden by law...Virtually any law—federal, state or local—can serve

25  as a predicate for an action under Business and Professions Code section 17200."

26  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1360-1361 (2010). Here,

27  Chan alleges that FIA violated state and federal laws, including the federal

28  Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968

9

1  ("RICO"). And as presented below, Chan sufficiently states a claim for relief under

2  RICO in his Fourth Cause of Action in the FAC.

3       Moreover, Chan alleges that FIA illegally arbitrated their false credit card

4  claims, and illegally performed debt collection actions, in order to collect money

5  from Chan and the plaintiff class. FAC ¶¶ 23, 24, 25, 28, 29, 30, 31, 32, 33, 34,

6  58, 66, 67, 76-80. Chan clearly alleges that FIA violated state and federal law. The

7  "unlawful" option is met in the FAC.

8       **b.**    **Unfair Conduct**

9       The "unfair" standard is intentionally broad to allow courts to have

10  maximum discretion to prohibit schemes to defraud. *Countrywide Financial Corp.*

11  *v. Bundy*, 187 Cal. App. 4th 234, 257 (2010). Business and Professions Code,

12  section 17200 does not define the term "unfair." "Unfairness," through caselaw,

13  has been defined as violating established public policy <u>or</u> "is immoral, unethical,

14  oppressive or unscrupulous and causes injury to consumers which outweighs its

15  benefits." *McKell*, 142 Cal. App. 4th. at 1473 (emphasis added). An "unfair"

16  business practice is actionable even if it is not "deceptive" or "unlawful." *Cel-Tech*

17  *Communications, Inc.*, 20 Cal.4th at 180. "Whether a practice is deceptive,

18  fraudulent, or unfair is generally a question of fact which requires consideration

19  and weighing of evidence from both sides" and which usually cannot be made on

20  demurrer." *McKell*, 142 Cal. App. 4th. at 1473.

21       Here, Chan alleges FIA deceives California credit card holders by

22  attempting to create a binding arbitration agreement based on "bill stuffers." FAC

23  ¶¶ 13, 24, 25. FIA conspired with NAF and others to illegally arbitrate Chan's and

24  other credit card holders' false debt, in order to make a profit from their unlawful

25  debt collecting activities. FAC ¶¶ 33-37, 58-73. These actions violate RICO

26  because FIA and others conspired to further their fraudulent scheme using the mail

27  and wires to turn a profit by the use of unlawful arbitrations and false

28  representations in the court and to third parties. FAC ¶¶109-118. These actions

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

10

1   caused injury to Chan, and causes injury to the public because FIA forced them to

2   incur damages stemming from FIA's judgments, damages from FIA inducement in

3   entering into high-interest loans and damages from interest payments to FIA. FAC

4   ¶¶ 86-88, 94-96, 100, 101. Chan clearly alleges that FIA's unlawful conduct causes

5   injury to the public.

6         At this stage of litigation, it is uncertain what the impact is on the victims,

7   verses the utility of the defendant's conduct. *See Scripps Clinic v. Superior Court*,

8   108 Cal. App. 4th 917, 939 (2003). Thus, it is improper to determine whether or

9   not FIA's conduct was unfair, merely based on Chan's FAC.

10                    **c.    Fraudulent Conduct**

11        When an unfair competition claim is based on fraudulent business practices,

12  "a plaintiff need not plead the exact language of every deceptive statement; it is

13  sufficient for [the] plaintiff to describe a scheme to mislead customers, and allege

14  that each misrepresentation to each customer conforms to that scheme." *Committee*

15  *on Children's Television, Inc. v. General Foods Corp*., 35 Cal.3d 197, 212–213

16  (1983). The term "fraud" is not predicated upon proof of the common law tort of

17  deceit or deception but simply means whether the public is likely to be deceived.

18  *Id.* at 211. The allegations "may be based on representations to the public which

19  are untrue, and representations "which may be accurate on some level, but will

20  nonetheless tend to mislead or deceive. … A perfectly true statement couched in

21  such a manner that it is likely to mislead or deceive the consumer, such as by

22  failure to disclose other relevant information, is actionable under the UCL."

23  *McKell,* 142 Cal.App.4th at 1471.

24        Chan alleges that FIA made false representations and concealed material

25  facts that tended to mislead and deceive the public about FIA's arbitration and

26  lawsuits, and the FIA-NAF relationship. FAC ¶¶ 59-69, 91. Also, Chan clearly

27  alleges that he relied on FIA's conduct which directly and proximately caused his

28  injuries. FAC ¶¶ 86-88, 93-96, 100-101. This clearly meets the *Tabacco II* standard

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

11

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

1   of pleading "reliance." *In re Tobacco II Cases,* 46 Cal.4th 298, 326 (2009)

2   ("Tobacco II")("[R]eliance is proved by showing that the defendant's

3   misrepresentation or nondisclosure was "an immediate cause" of the plaintiff's

4   injury-producing conduct."). As above, Chan meets the required allegations for a

5   fraud claim. And even if he doesn't meet the fraud standard, Chan still sufficiently

6   makes a claim for the "fraudulent" business practices option under the UCL

7   because of his allegations of FIA's untrue representations, concealment and illegal

8   actions. FAC 23, 24, 25, 28, 29, 30, 31, 32, 33, 34, 58, 66, 67, 76-80. 91, 92, 109-

9   118.

10      Because Chan meets all three options under the UCL, FIA's Motion should

11  be denied as to Chan's third cause of action.

12  **D.    CHAN SUFFICIENTLY STATES A CLAIM UNDER RICO**

13      The elements for a claim under 18 U.S.C. § 1962(c) are as follows, "(1)

14  conduct [by a person] (2) of an enterprise (3) through a pattern (4) of racketeering

15  activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985).

16      **1.    Person**

17      Here, Chan alleges these elements in the FAC. Defendants MBNA and FIA

18  are "persons" under 18 U.S.C. § 1961(3). FAC ¶ 107. This is undisputed.

19      **2.    Racketeering Activity**

20      "Racketeering activity" is any act indictable under several provisions of

21  Title 18 of the United States Code. *Rothman v. Vetter Park Management*, 912 F.2d

22  315, 316 (9th Cir. 1990); *see* 18 U.S.C. § 1961. This includes mail and wire fraud.

23  *See* 18 U.S.C. §§ 1341 and 1343. The elements of mail fraud are stated in section

24  1341, and include 1) a scheme or artifice to defraud, 2) the participation by the

25  defendant in the scheme, 3) specific intent on the part of the defendant to defraud

26  the plaintiff, 4) deception of the plaintiff, and 5) the use of the US mails or

27  interstate carriers in furtherance of the scheme or artifice to defraud. 18 U.S.C. §

28  1341. Wire fraud elements are similar: "(1) the formation of a scheme or artifice to

1  defraud; (2) use of the United States wires or causing a use of the United States

2  wires in furtherance of the scheme; and (3) specific intent to deceive or defraud."

3  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007). "[G]eneral rather

4  than particularized allegations are sufficient" to show the defendant's state of

5  mind, which pertains to the first and third elements – the formation of a scheme

6  and intent. *Id.*

7         Chan sufficiently alleges these elements. There exists a fraudulent scheme

8  (FAC ¶ 109) in which FIA participated (FAC ¶¶ 108, 109), with intent to defraud

9  Chan (FAC ¶¶ 83, 84, 92)  and Chan was defrauded (FAC ¶¶ 93, 117), by FIA's

10  use of US mails, wires, and carriers in furtherance of their scheme. (FAC ¶¶ 110,

11  111, 112, 114.) The particular circumstances are outlined in the "pattern" section

12  below.

13         There is no requirement to name particular employees, as there is no reason

14  to believe that defendants will be hampered in their defense by the lack of specific

15  names. *See Odom*, 486 F.3d at 555.

16         FIA's weak arguments as to the merits of Chan's fraud claim are unavailing

17  and irrelevant. Chan's RICO claims are based on mail and wire fraud. Chan's FAC

18  does not contain any allegations regarding violations of the Fair Debt Collection

19  Practices Act, referenced in the non-binding case *Masuda v. Thomas Richards &*

20  *Co.* 759 F. Supp. 1456 (C.D. Cal 1991). *See* FIA Motion at P 19. FIA's arguments

21  as to re-characterizing debt collection activates is irrelevant.

22         **3.     Pattern**

23         Section 1961(5) defines "pattern of racketeering activity" to require "at least

24  two acts of racketeering activity," one of which occurred after the effective date of

25  the chapter (October 15, 1970) and the last of which occurred within ten years

26  (excluding any period of imprisonment) after the commission of a prior act of

27  racketeering activity. 18 U.S.C. §1961(5). Section 1961"does not so much define a

28  pattern of racketeering activity as state a minimum necessary condition for the

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

13

1  existence of such a pattern." *H.J., Inc. v. Northwest Bell Telephone Co.*, 492 U.S.

2  229, 237, 109 S.Ct. 2893, 106 L. Ed. 2d 195 (1989). These acts are shown by

3  allegations of FIA sending Chan a letter using the US postal service, containing

4  false information about his credit card debt. FAC ¶¶ 14, 15, 16, 17, 63 (alleging

5  FIA, through its counsel Wolpoff & Abramson, sent two letters to Chan on

6  October 7, 2002). FIA also filed arbitration claims with NAF, using the US postal

7  service and wires, using false information. FAC ¶¶ 18, 19, 20, 21, 23 (alleging FIA

8  filed two claims with NAF on September 11, 2002.) FIA through its counsel

9  Wolpoff & Abramson, mailed a letter to Chan with false representations. FAC ¶¶

10 38, 63 (specifically on May 6, 2008). FIA filed lawsuits with false representations,

11 using the US postal service and wires. FAC ¶¶ 40, 41, 42 (FIA's petitions with

12 false information were granted specifically on March 11, 2004.) FIA telephoned

13 Chan and stated false representations. FAC ¶¶ 44, 46, 47, 50 (specifically in fall

14 2004, and in February 2006). FIA's fraudulent conduct is continuing. FAC ¶¶ 98,

15 99, 113. Chan clearly alleges two or more predicate acts by FIA and their agents,

16 that were fraudulent, from October 15, 1970 to the present. FIA received money

17 and property from Chan because of its acts. FAC ¶¶ 56, 57 (specifically on

18 February 23, 2007).

19        And, as above, damages and proximate cause are clearly alleged. FIA's

20 actions caused injury to Chan, and causes injury to the public because FIA forced

21 them to incur damages stemming from FIA's judgments, damages from FIA

22 inducement in entering into high-interest loans and damages from interest

23 payments to FIA. FAC ¶¶ 86-88, 94-96, 100, 101. Chan clearly alleges that he

24 relied on FIA's conduct which directly and proximately caused his injuries. FAC

25 ¶¶ 117, 118.

26        **4.    Enterprise**

27        18 U.S.C. § 1961(4) defines "enterprise" as "any individual, partnership,

28 corporation, association, or other legal entity, and any union or group of

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

14

1   individuals associated in fact although not a legal entity." An associated-in-fact

2   enterprise "does not require any particular organizational structure, separate or

3   otherwise." *Odom*, 486 F.3d at 551. It is "a group of persons associated together

4   for a common purpose of engaging in a course of conduct." *United States v.*

5   *Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L.Ed. 2d 246 (1981). Chan alleges

6   that the "enterprise" consists of FIA, MBNA, Bank of America, NAF, and Wolpoff

7   & Abramson. FAC ¶ 108. This is undisputed.

8        Chan alleges that the enterprise had a "common purpose" of furthering their

9   fraudulent scheme of making a profit by collecting spurious credit card debt

10   through wrongful arbitrations, judicial proceedings, and false representations. FAC

11   ¶ 109. FIA, MBNA, Bank of America, NAF, and their affiliates furthered this

12   scheme by making telephone calls and transferring funds using interstate wires.

13   FAC ¶¶ 111, 112. FIA issued credit cards. FAC ¶ 12. FIA telephoned Chan and

14   stated false representations in furtherance of the scheme. FAC ¶¶ 44, 46, 47, 50.

15   NAF furthered this scheme by assisting FIA and MBNA in drafting arbitration

16   clauses, conducting arbitration services, referring FIA and MBNA to debt

17   collection firms, assisting FIA and MBNA in collecting debt, and aiding FIA and

18   MBNA in filing arbitrations and lawsuits. FAC ¶¶ 12, 62-71. Wolpoff &

19   Abramson was used to send letters to Chan containing false representations, to

20   further the scheme. FAC ¶¶ 15, 16, 38, 64.

21        This enterprise was an "ongoing organization" because it performed two or

22   more predicate acts. "An ongoing organization is 'a vehicle for the commission of

23   two or more predicate crimes." *Odom*, 486 F.3d at 552. As above, Chan alleges

24   two or more predicate acts. FIA sending Chan a letter using the US postal service,

25   containing false information about his credit card debt. FAC ¶¶ 14, 15, 16, 17, 63.

26   FIA filed arbitration claims with NAF, using the US postal service and wires, using

27   false information. FAC ¶¶ 18, 19, 20, 21, 23. FIA through its counsel Wolpoff &

28   Abramson, mailed a letter to Chan with false representations. FAC ¶¶ 38, 63. FIA

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

15

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

1   filed lawsuits with false representations, using the US postal service and wires.

2   FAC ¶¶ 40, 41, 42. FIA telephoned Chan and stated false representations. FAC ¶¶

3   44, 46, 47, 50. FIA's fraudulent conduct is continuing. FAC ¶¶ 98, 99, 113.

4       This enterprise was a continuing unit. "The continuity requirement does not,

5   in itself, require that every member 'be involved in each of the underlying acts of

6   racketeering, or that the predicate acts be interrelated in any way'...Instead, the

7   continuity requirement focuses on whether the associates' behavior was 'ongoing'

8   rather than isolated activity." *Odom,* 486 F.3d at 552-53 (citations omitted). Here,

9   Chan alleges that the enterprise began in late 1998/early 1999, from when Chan

10   was issued a credit card from FIA, and continued through June 28, 2007 when the

11   appellate court vacated FIA's judgments, and through July 2009, when the

12   Minnesota Attorney General filed its action, to the present. FAC ¶¶12, 57, 72, 113.

13   As in the Odom case, "[a]n almost two-year time span is far more than adequate to

14   establish" that the enterprise functioned as a continuing unit. *Id.* at 553. Here, Chan

15   alleges more than a decade of ongoing unlawful acts.

16       Section 1962(c) makes it unlawful "for any person employed by or

17   associated with any enterprise . . . to conduct or participate, directly or indirectly,

18   in the conduct of such enterprise's affairs through a pattern of racketeering activity

19   . . . " 18 U.S.C. § 1962(c). In *Reves v. Ernst & Young,* 507 U.S. 170, 122 L. Ed. 2d

20   525, 113 S. Ct. 1163 (1993), the Court held that defendant's preparation of the

21   audit reports, meeting with the Board of Directors to explain the audits, and

22   presentations at the annual meetings, did not suffice to impute RICO liability. 507

23   U.S. at 173-175, 186. It was the plaintiff itself that hired the defendant, and

24   ultimately made the decision to use defendant's reports. *Id.* at 173-175. Similarly,

25   in *Baumer v. Pachl,* 8 F.3d 1341 (9th Cir. 1993), the defendant merely provided

26   legal services sporadically. *See also Univ. of Md. at Balt., et al. v. Peat, Marwick,*

27   *Main & Co.,* 996 F.2d 1534, 1539 (3d Cir. 1993) ("simply because one provides

28   goods or services that ultimately benefit the enterprise does not mean that one

16

1   becomes liable under RICO as a result. There must be a nexus between the person

2   and the conduct in the affairs of an enterprise.")

3        Chan's allegations are much different. Chan alleges that FIA wasn't just the

4   hired hand. FIA was the principal director of the enterprise. FIA was the one who

5   knowingly chose and employed NAF and Wolpoff & Abramson in furtherance of

6   their scheme. FAC ¶¶ 61, 63, 37, 116. FIA was the one who decided to use NAF in

7   its arbitration proceedings, to pick the arbitration locations, and hired Wolpoff &

8   Abramson, debt collection agencies, and FIA's own employees to send out letters

9   and make telephone calls to Chan and the plaintiff class. FAC ¶¶ 14, 15, 16, 17, 18,

10  19, 20, 21, 23, 44, 46, 47, 50, 63.

11       FIA erroneously argues that that FIA does not "conducts the affairs" of the

12  enterprise because it is a bank, and bankers by law do not "conduct the affairs" of a

13  RICO enterprise. *See* FIA Motion at P 22. The *Dahlgren v. First Nat'l Bank* case

14  dealt with the issue of whether a bank could conduct the affairs of a bank's

15  customer. A bank "exercising its formidable rights as creditor is not evidence that

16  the bank controlled the customer's operations and management." *Dahlgren v. First*

17  *Nat'l Bank*, 533 F.3d 681, 690 (8th Cir. 2008). Chan is not alleging that FIA is a

18  mere bank that lent money to the enterprise, but participated as a principal. FAC ¶

19  115. FIA was the one who issued a credit card to Chan in order to use NAF and

20  Wolpoff & Abramson to collect on a spurious debt. FAC ¶¶ 12, 13, 63, 67.  Chan

21  is not alleging that FIA "conducted the affairs" of their debtors, as in *Dahlgren*.

22  Chan is alleging that FIA conducted the affairs of the enterprise consisting of NAF,

23  Wolpoff & Abramson and other entities in order to get money and property from

24  debtors. Thus, FIA's argument is unavailing and irrelevant, yet again.

25       Chan sufficiently alleges all the elements of a RICO claim, with enough

26  facts to meet the FRCP 9 standard. As such, FIA's Motion should be denied in its

27  entirety.

28  ///

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

17

## IV.   **CONCLUSION**

For the reasons stated above, CHAN respectfully asks this Court to deny FIA's Motion to Dismiss CHAN's FAC. If the Court decides to grant FIA's motion to dismiss in whole or in part, then CHAN accordingly asks this Court to grant him leave to amend his FAC, in the interests of justice.

DATED:

**CHAVOS & RAU, APLC**

By _____
LAURIE D. RAU
ANTHONY G. CHAVOS
JENNIFER W. GATEWOOD
JANET S. PARK
Attorneys for STEVE CHAN

CHAVOS & RAU, APLC
3 MacArthur Place, Suite 150
Santa Ana, CA 92707

18